# EXHIBIT A

MICHAEL K. JEANES, CLERK
BY
J. Lewis     DEP

J. LEWIS, FILED

17 JUN 12  PM 3: 35

1   Matthew L. McClellan (I.D.# 022586)
    The McClellan Law Firm
2   361 East Coronado, Suite 101
    Phoenix, Arizona 85004-1525
3   Telephone:  (602) 386-4800
    Fax:  (602) 386-4801
4   matt@mcclellanlawaz.com

5   Richard Plattner, Bar # 005019
    PLATTNER VERDERAME
6   316 E. Flower St.
    Phoenix, AZ 85012
7   Telephone: (602) 266-2002
    rplatter@plattner-verderame.com
8   *Attorneys for Plaintiff*

9                          **Superior Court of Arizona**

10                           **Maricopa County**

11   CHERYL SAM and CARLEEN SAM,      )   NO.  CV 2017-008891
     individually and on behalf of    )
     themselves and their respective  )
12   bankruptcy estates, Lawrence     )
     Warfield, trustee,               )
                                      )   **Certificate Regarding the Need for**
                        Plaintiffs,   )   **Expert Testimony**
13                                    )
     v.                               )
14                                    )
     THE LEDBETTER LAW FIRM,          )
15   P.L.C.; an Arizona professional  )
     limited liability company; STATE )
     FARM FIRE AND CASUALTY           )
16   COMPANY, an Illinois corporation;)
     JOHN and JANE DOES I-X; BLACK    )
     and WHITE PARTNERSHIPS I-X;      )
17   ABC CORPORATIONS I-X,            )
                                      )
                        Defendants.   )
18   ─────────────────────────────────

19        Plaintiffs certify the claims against Defendant Ledbetter Law Firm, P.L.C. are

1    subject to expert testimony regarding liability issues pursuant to A.R.S. §12-2602.

2

3            DATED this 12th day of June, 2017.

4                                    By _____

5                                       Matthew L. McClellan
                                        THE MCCLELLAN LAW FIRM, P.L.C.
6
                                        and
7
                                        Richard S. Plattner
8                                       PLATTNER VERDERAME, P.C.
                                        *Attorneys for Plaintiff*
9

10

11

12

13

14

15

16

17

18

19

20

MICHAEL K. JEANER, CLERK
BY
J. LEWIS, FILED

17 JUN 12 PM 3:35

1 | Matthew L. McClellan (I.D.# 022586)
The McClellan Law Firm
2 | 361 East Coronado, Suite 101
Phoenix, Arizona 85004-1525
3 | Telephone: (602) 386-4800
Fax: (602) 386-4801
4 | matt@mcclellanlawaz.com

5 | Richard Plattner, Bar # 005019
PLATTNER VERDERAME
6 | 316 E. Flower St.
Phoenix, AZ 85012
7 | Telephone: (602) 266-2002
rplatter@plattner-verderame.com
8 | *Attorneys for Plaintiff*

9 |                    **Superior Court of Arizona**

10 |                     **Maricopa County**

11 | CHERYL SAM and CARLEEN SAM,          )   NO.   CV 2017-008691
individually and on behalf of        )
themselves and their respective      )
12 | bankruptcy estates, Lawrence        )   **Demand for Jury Trial**
Warfield, trustee,                   )
                         Plaintiffs,  )
13 |                                      )
v.                                   )
14 |                                      )
THE LEDBETTER LAW FIRM,              )
15 | P.L.C.; an Arizona professional     )
limited liability company; STATE     )
16 | FARM FIRE AND CASUALTY             )
COMPANY, an Illinois corporation;    )
JOHN and JANE DOES I-X; BLACK        )
17 | and WHITE PARTNERSHIPS I-X;        )
ABC CORPORATIONS I-X,                )
18 |                         Defendants.  )

19 |        Plaintiffs demand a jury trial on all issues.

DATED this 12th day of June, 2017.

By _____

Matthew L. McClellan
THE MCCLELLAN LAW FIRM, P.L.C.

and

Richard S. Plattner
PLATTNER VERDERAME, P.C.
*Attorneys for Plaintiff*

**In the Superior Court of the State Of Arizona**
**In and For the County of Maricopa**

Case Number _____

# CV2017-008891

Plaintiff's Attorney  Matthew L. McClellan

Attorney's Bar Number  022586

Plaintiff's Name (s): (List all)
CHERYL SAM and CARLEEN SAM, individually and on behalf
of themselves and their respective bankruptcy estates, Lawrence
Warfield, trustee

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name (s): (List all)
THE LEDBETTER LAW FIRM, P.L.C.; an Arizona professional
limited liability company; STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois corporation; JOHN and JANE DOES I-X;
BLACK and WHITE PARTNERSHIPS I-X; ABC
CORPORATIONS I-X

(List additional defendants on page two and/or attach a separate sheet).

Is Interpreter Needed?  ☐ Yes  ☒ No
If yes, language type: _____
Attorney/Pro Per Signature _____
To the best of my knowledge, all information is true and correct

Plaintiff's Address:
c/o The McClellan Law Firm, PLC

361 E. Coronado, Suite 101
Phoenix, AZ 85004

MICHAEL K. JEANES. CLERK
BY
J. LEWIS, DEP
FILED
17 JUN 12 PM 3: 34

EMERGENCY ORDER SOUGHT:  ☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC
☐ Election Challenge    ☐ Employer Sanction    ☐ Other

☐ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY.  (Mark appropriate box under **Nature of Action**).

☐ RULE 8(i) COMPLEX LITIGATION APPLIES.  Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case"
as civil actions that require continuous judicial management.  A typical case involves a large number of witnesses, a
substantial amount of documentary evidence, and a large number of separately represented parties.  (Mark appropriate box
on page two as to complexity, **in addition** to the Nature of Action case category.)

## NATURE OF ACTION
(Place an "**X**" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death
**110 TORT NON-MOTOR VEHICLE:**
☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort
☐ 114 Property Damage
☒ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation

☐ 116 Other (Specify)
**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D.    ☐ 123 Hospital
☐ 122 Physician D.O.    ☐ 124 Other
**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☐ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds – Sale
☐ Construction Defects (Residential/Commercial)
☐ 136 Six to Nineteen Structures
☐ 137 Twenty or More Structures

1

## 150 – 199 OTHER CIVIL CASE TYPES:

- [ ] 156 Eminent Domain/Condemnation
- [ ] 151 Forcible Detainer
- [ ] 152 Change of Name
- [ ] 153 Transcript of Judgment
- [ ] 154 Foreign Judgment
- [ ] 158 Quiet Title
- [ ] 160 Forfeiture
- [ ] 175 Election Challenge
- [ ] 179 Employer Sanction Action (A.R.S. §23-212)
- [ ] 180 Injunction against Workplace Harassment
- [ ] 181 Injunction against Harassment
- [ ] 182 Civil Penalty
- [ ] 186 Water Rights (Not General Stream Adjudication)
- [ ] 187 Real Property
- [ ] Sexually Violent Persons (A.R.S.§36-3704)
      (Except Maricopa County)
- [ ] Minor Abortion (See Juvenile in Maricopa County)
- [ ] Special Action Against Lower Courts
      (See lower court appeal cover sheet in Maricopa)

- [ ] 155 Declaratory Judgment
- [ ] 157 Habeas Corpus
- [ ] 184 Landlord Tennant Dispute - Other
- [ ] 159 Restoration of Civil Rights (Federal)
- [ ] 159 Clearance of Records (A.R.S. §13-4051)
- [ ] 190 Declaration of Factual Innocence (A.R.S. §12-771)
- [ ] 191 Declaration of Factual Improper Party Status
- [ ] 193 Vulnerable Adult (A.R.S. §46-451)
- [ ] 165 Tribal Judgment
- [ ] 167 Structured Settlement (A.R.S. §12-2901)
- [ ] 169 Attorney Conservatorships (State Bar)
- [ ] 170 Unauthorized Practice of Law (State Bar)
- [ ] 171 Out-of-State Deposition for Foreign Jurisdiction
- [ ] 172 Secure Attendance of Prisoner
- [ ] 173 Assurance of Discontinuance
- [ ] 174 In-State Deposition for Foreign Jurisdiction
- [ ] 176 Eminent Domain – Light Rail Only
- [ ] 177 Interpleader – Automobile Only
- [ ] 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- [ ] 183 Employment Dispute - Discrimination
- [ ] 185 Employment Dispute - Other
- [ ] 163 Other
        (Specify)

## 150-199 UNCLASSIFIED CIVIL CASE TYPES:

- [ ] Administrative Review
      (See lower court appeal cover sheet in Maricopa)
- [ ] 150 Tax Appeal

(All other tax matters must be filed in the AZ Tax Court)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- [ ] Antitrust/Trade Regulation
- [ ] Construction Defect with many parties or structures
- [ ] Mass Tort
- [ ] Securities Litigation with many parties
- [ ] Environmental Toxic Tort with many parties
- [ ] Class Action Claims
- [ ] Insurance Coverage Claims arising from the above-listed case types

Additional Plaintiff(s):


Additional Defendant(s):

2

MICHAEL K. JEANES, CLERK
BY
J. Lewis
J. LEWIS, FILED

17 JUN 12  PM 3: 35

1  Matthew L. McClellan (I.D.# 022586)
   The McClellan Law Firm
2  361 East Coronado, Suite 101
   Phoenix, Arizona  85004-1525
3  Telephone:  (602) 386-4800
   Fax:  (602) 386-4801
4  matt@mcclellanlawaz.com

5  Richard S. Plattner, Bar # 005019
   PLATTNER VERDERAME
6  316 E. Flower St.
   Phoenix, AZ 85012
7  Telephone: (602) 266-2002
   rplatter@plattner-verderame.com
8  *Attorneys for Plaintiff*

9                    **Superior Court of Arizona**

10                    **Maricopa County**

11  CHERYL SAM and CARLEEN SAM,      ) NO.
    individually and on behalf of          )      CV 2017 - 008891
12  themselves and their respective       )
    bankruptcy estates, Lawrence          ) **Certificate Regarding Compulsory**
    Warfield, trustee,                          ) **Arbitration**
13                        Plaintiffs,        )
                                                   )
    v.                                             )
14                                                 )
                                                   )
15  THE LEDBETTER LAW FIRM,          )
    P.L.C.; an Arizona professional        )
16  limited liability company; STATE      )
    FARM FIRE AND CASUALTY           )
    COMPANY, an Illinois corporation;  )
17  JOHN and JANE DOES I-X; BLACK   )
    and WHITE PARTNERSHIPS I-X;     )
    ABC CORPORATIONS I-X,              )
18                                                 )
                        Defendants.       )

19        The  undersigned  certifies  that  he  knows  the  dollar  limits  and  any  other

1  limitations set forth by the local rules of practice for the applicable superior court,

2  and further certifies that this case is *not* subject to compulsory arbitration, as

3  provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

4

5  DATED this 12th day of June, 2017.

6

7  By

   Matthew L. McClellan

8  THE MCCLELLAN LAW FIRM, P.L.C.

9  and

10  Richard S. Plattner
    PLATTNER VERDERAME, P.C.

11  *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

MICHAEL K. JEANES
Clerk of the Superior Court
By Joan Lewis, Deputy
Date 06/12/2017 Time 15:35:19
Description                     Amount
————— CASE# CV2017-008891 —————
CIVIL NEW COMPLAINT             319.00

TOTAL AMOUNT                    319.00
            Receipt# 25991537

1 | Matthew L. McClellan (I.D.# 022586)
The McClellan Law Firm
2 | 361 East Coronado, Suite 101
Phoenix, Arizona 85004-1525
3 | Telephone: (602) 386-4800
Fax: (602) 386-4801
4 | matt@mcclellanlawaz.com

5 | Richard Plattner, Bar # 005019
PLATTNER VERDERAME
6 | 316 E. Flower St.
Phoenix, AZ 85012
7 | Telephone: (602) 266-2002
rplatter@plattner-verderame.com
8 | *Attorneys for Plaintiff*

9 | **Superior Court of Arizona**

10 | **Maricopa County**

11 | CHERYL SAM and CARLEEN SAM, ) NO. CV2017-008891
individually and on behalf of )
themselves and their respective )
12 | bankruptcy estates, Lawrence ) **Complaint**
Warfield, trustee, )
13 | )  (Tort Non-Motor Vehicle – Bad
                    Plaintiffs, )  Faith/Breach of Contract/Legal
v. )  Malpractice)
14 | )
15 | THE LEDBETTER LAW FIRM, )
P.L.C.; an Arizona professional )
limited liability company; STATE )
16 | FARM FIRE AND CASUALTY )
COMPANY, an Illinois corporation; )
17 | JOHN and JANE DOES I-X; BLACK )
and WHITE PARTNERSHIPS I-X; )
ABC CORPORATIONS I-X, )
18 | )
                    Defendants. )
                             )

19 | Plaintiffs, for their Complaint, state, aver and allege as follows:

1.    Plaintiff Cheryl Sam is, and at all times was a resident of Apache County, Arizona.

2.    Plaintiff Carleen Sam is, and at all times was a resident of Apache County, Arizona.

3.    Plaintiff Lawrence Warfield is a US Bankruptcy Trustee for the District of Arizona. Plaintiff Warfield is the duly appointed Trustee for the bankruptcies filed by Plaintiffs Carleen and Cheryl Sam at the behest of Defendant Ledbetter Law Firm, PLC.

4.    Defendant Ledbetter Law Firm, PLC, ("LLF") is an Arizona professional corporation, having its principal place of business located in Yavapai County, Arizona that, at all relevant times hereto, was engaged in the business of providing legal services and provided legal services to Plaintiffs.  LLF is liable for the acts of its employees under the doctrine of *respondeat superior* and LLF is liable for the conduct of its agents under principles of agency.

5.    All acts by LLF described herein were committed by and through its servants, employees, or agents, and subsequently ratified by LLF.

6.    Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois Corporation licensed to do and doing business in Arizona.

7.    Defendant State Farm is liable for the acts of its employees under the doctrine of *respondeat superior* and State Farm is liable for the conduct of its agents

1  under principles of agency.

2      8.     All acts by State Farm described herein were committed by and through

3  its servants, employees, or agents, and subsequently ratified by State Farm.

4      9.     The   Defendants,   Black   and   White   Partnerships   I-X   and   ABC

5  Corporations I-X, are fictitious entities whose true names are presently unknown,

6  but who may have been parent companies, subsidiaries or affiliates of State Farm

7  and liable for the acts complained of herein.  Upon ascertaining the true names and

8  conduct of such entities, leave is requested to amend the Complaint.

9      10.    State Farm is directly liable for breaches of its non-delegable duty of good

10  faith and fair dealing committed by any of its servants, employees, agents, attorneys

11  or TPA's.

12      11.    This Court has subject matter jurisdiction and personal jurisdiction over

13  all of the parties named herein.

14                              **General Allegations**

15      12.    At all relevant times Plaintiff Cheryl Sam maintained an insurance

16  policy with Defendant State Farm under policy No. 0254-996-03A with liability limits

17  of $15,000 per person and $30,000 per incident.

18      13.    On October 20, 2009, Plaintiff Carleen Sam was a permissive user of

19  Plaintiff Cheryl Sam's automobile covered by the State Farm policy, when she was

20  involved in a crash in Fort Defiance, Arizona.

14.   The occupants of the other vehicle involved in the crash were Nancy Tabaha, Charlene Tabaha, Arvisa Tabaha and Stephanie Tabaha ("the Tabahas").

15.   On October 19, 2011, the Tabahas filed a Complaint against Cheryl Sam in the Navajo Nation District Court captioned WR-CV-288-11 ("Navajo Court action"), alleging personal injuries and damages arising from the October 20, 2009 crash.

16.   On November 21, 2011, Defendant LLF, having been retained by Defendant State Farm to represent the Sams, appeared in the Navajo Court action as counsel representing Plaintiff Cheryl Sam.  Defendant LLF was at all relevant times an agent and attorney for Defendant State Farm as well as attorney for the Sams.  All knowledge and information obtained by Defendant LLF as part of its representation of the Sams is legally imputed to Defendant State Farm. *In re Estate of Milliman*, 101 Ariz. 54, 415 P.2d 877 (1966); *Pargman v. Vickers*, 208 Ariz. 573, 579, 96 P.3d (App. 2004)

17.   On November 21, 2011, Defendant LLF wrote to the Arizona Health Care Cost Containment System ("AHCCCS") requesting lien information regarding the Tabahas.

18.   In December 2011 and January 2012, AHCCCS advised Defendant LLF that it was pursuing liens with respect to medical payments made on behalf of the Tabahas in the amounts of:

1       a.     Stephanie Tabaha ⸱    $    855.93

2       b.     Charlene Tabaha ⸱    $    319.93

3       c.     Arvisa Tabaha ⸱     $  2,923.16

4       d.     Nancay Tabaha ⸱    $ 49,581.13

5       19.    As of January 13, 2012, Defendants were aware that Nancy Tabaha has

6  incurred medical expenses of at least $172,306.00 from St Joseph's Hospital and

7  Medical Center in relation to injuries she suffered in the car crash.

8       20.    On or about February 2, 2012, the Tabahas' counsel's office contacted

9  State Farm directly and requested the policy limits if they were low, and offered to

10  settle the Tabahas' claims for those limits.

11       21.    Upon information and belief, State Farm and LLF never responded to

12  this policy limits demand from the Tabahas.

13       22.    On March 21, 2012, the Tabahas, in a letter faxed and mailed to LLF,

14  collectively offered to settle and release all their personal injury claims against the

15  Sams in exchange for the Sams' $30,000 policy limits.  The letter stated the offer

16  would be withdrawn on March 30, 2012 if not accepted.

17       23.    Upon information and belief, Defendant LLF failed to communicate the

18  time-limited policy limits settlement proposal to Defendant State Farm.  Neither

19  Defendant LLF nor Defendant State Farm requested an extension of the time limit.

20       24.    By failing to timely accept the March 21, 2012 policy limits proposal

1    given to LLF, Defendant State Farm's agent, Defendant State Farm rejected the offer

2    to settle for Plaintiffs' policy limits.

3        25.    Defendant State Farm offered to pay its $30,000 policy limits to the

4    Tabahas for the first time on October 2, 2014 by letter from State Farm to the Sams'

5    attorneys, approximately 30 months after the deadline had expired.   The Tabahas

6    refused to accept Defendant State Farm's belated settlement proposal.

7        26.    On or about November 9 or 10, 2015, Defendant LLF recommended to

8    the Sams that they file bankruptcy.

9        27.    On or about November 9 and/or 10, 2015, and before talking to

10   bankruptcy counsel, the Sams agreed to follow Defendant LLF's recommendation to

11   file bankruptcy.

12       28.    Upon information and belief, before Plaintiffs agreed to file for

13   bankruptcy, Defendant LLF selected and contacted law firm Davis Miles McGuire

14   Gardner, PLLC ("Davis Miles") to file an emergency bankruptcy for the Sams.  Davis

15   Miles quoted a flat fee of $5,000 to handle the "emergency bankruptcy case."

16       29.    On November 11, 2015, Defendant LLF paid $5,000 to Davis Miles with

17   check No. 16780 to file bankruptcy cases for the Sams.

18       30.    On November 12, 2015, Defendant State Farm refused to reimburse the

19   bankruptcy attorneys' fees.

20       31.    Before the trial was vacated, Defendants State Farm and LLF provided

1   the Plaintiffs with money to pay the necessary travel expenses to Flagstaff to

2   institute the "emergency bankruptcy case" and stay the trial.

3       32.   On November 13, 2015, Davis Miles filed two petitions for Chapter 7

4   bankruptcy in the United States Bankruptcy Court for the District of Arizona.

5   Plaintiff Carleen Sam's case is captioned 15-BK-14564 DPC and Cheryl Sam's case

6   is captioned 15-BK-14565-EPB.

7       33.   After the trial in the Navajo Court action was vacated, Defendants State

8   Farm and LLF refused to provide the Plaintiffs with necessary travel expenses to

9   Flagstaff for the Creditors' Meetings associated with their respective bankruptcy

10  cases.

11      34.   The Tabahas Navajo Court action claims were listed on the Sams'

12  Schedules B as creditors of Plaintiffs' respective bankruptcy estates.

13      35.   On April 6, 2016, the Tabahas filed an amended Proof of Claim in

14  Plaintiff Carleen Sam's bankruptcy cases in the amounts of $2,100,000.

15      36.   On April 6, 2016, the Tabahas filed an amended Proof of Claim in

16  Plaintiff Cheryl Sam's bankruptcy cases in the amounts of $2,100,000.

17      37.   On September 26, 2016, the Plaintiffs Sam agreed to cooperate with the

18  Plaintiff Warfield in the investigation of any claims they may have against

19  Defendants State Farm and LLF.

20      38.   On or about March 11, 2017, Defendant LLF contacted the Sams and

-7-

1  convinced them to withdraw cooperation with the Trustee, despite the Sams's

2  obligation to cooperate with the Trustee.

3     39.    Upon information and belief, LLF's March 2017 communication with the

4  Sams' was done with the knowledge, consent and/or at the behest of Defendant State

5  Farm.

6     40.    Upon information and belief, Defendants LLF and State Farm interfered

7  with the Sams' cooperation with the Trustee for their own benefit, knowing it was to

8  the detriment of the Sams.

9     41.    Upon information and belief, LLF and State Farm interfered with the

10  Sams' cooperation with the Trustee because LLF and State Farm believed the Sams'

11  cooperation with the Trustee would be detrimental to LLF's and State Farm's

12  interests.

13                          **Count I**
                **(Breach of Contract – State Farm)**

14

15     42.    Plaintiffs incorporate by reference all allegations contained in the

16  preceding paragraphs as though fully stated and alleged herein.

17     43.    For valuable consideration in the form of premiums, Plaintiff Cheryl

18  Sam contracted with Defendant State Farm to receive automobile liability insurance

19  protection coverage for her 2007 Chevrolet Trailblazer. Defendant State Farm,

20  issued Policy No. 0254-996-03A to Cheryl Sam providing coverage for automobile

1    liability up to limits of $15,000 per person and $30,000 per incident. Carleen Sam,

2    as a permissive user of the insured vehicle, was an omnibus insured under the policy.

3    44.    In return for valuable consideration in the form of premiums, State Farm

4    promised to pay damages for bodily injury for which any insured became legally

5    responsible because of an auto accident.

6    45.    Defendant State Farm breached its contractual obligation to pay

7    damages the Sams became legally responsible to pay because of the car crash on

8    October 20, 2009.

9    46.    As a direct and proximate result of State Farm's breach, Plaintiffs

10   suffered damages in excess of the jurisdictional limits of this court.

11
**Count II**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing – State Farm)**

12
47.    Plaintiffs incorporate by reference all allegations contained in the

13   preceding paragraphs as though fully stated and alleged herein.

14
48.    Every insurance contract has an implied duty of good faith and fair

15   dealing.  Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565 (1986).

16
49.    The duty of good faith and fair dealing requires an insurance company

17   to give the same consideration to its insured's interests as it gives to its own when it

18   considers a settlement offer. General Accident Fire & Life Assur. Corp. v. Little, 103

19

20

1    Ariz. 435, 443 P.2d 690 (1968); Farmers Ins. Exchange v. Henderson, 82 Ariz. 335,

2    313 P.2d 404, 405-408 (Ariz. 1957).

3       50.    The test for evaluating whether an insurance company has given equal

4    consideration to the interests of its insured is whether a prudent insurer without

5    policy limits would have accepted the settlement offer. RAJI (CIVIL 5TH ED.) Bad

6    Faith 8.

7       51.    This doctrine imposes liability for excess damages for insurance

8    companies that wrongly reject reasonable settlement demands and thereby expose

9    their insureds to losses above the policy limits.

10      52.    The duty of equal consideration focuses primarily on liability limits as a

11   source of conflict between insurers and insureds and seeks to neutralize the effect of

12   those limits by requiring insurers to ignore them when evaluating settlements.

13   Insurance companies are required to act as if there were no insurance limits when

14   evaluating a settlement proposal. *Clearwater v. State Farm Mut. Ins. Co.,* 164 Ariz.

15   256, 260, 792 P.2d 719, 723 (1990).

16      53.    The claim function of the insurance company is the delivery of the

17   promise to pay. The claim function should include the prompt, fair, and efficient

18   delivery of this promise.

19      54.    The claim professional handling claims should honor the company's

20   obligations under the implied covenant of good faith and fair dealings.

1    55.    To be effective in handling claims, a claim representative should have a

2   working knowledge of tort law, contract law, statutory law, common law, and civil

3   procedures.

4    56.    The main function of the claim department is to pay claims.  The claims

5   process involves the prompt, fair, and efficient payment of covered losses.

6    57.    The claim representative's primary duty is to fulfill the insurance

7   company's promises to the insured.

8    58.    An insurer has a duty "to immediately conduct an adequate

9   investigation, act reasonably in evaluating the claim, and act promptly in paying a

10   legitimate claim."

11    59.    On February 2, 2012 and March 21, 2012, the Tabahas offered to resolve

12   all their claims against the Plaintiffs in exchange for the available $30,000 policy

13   limits.

14    60.    The collective Tabaha claims far exceeded the available limits and

15   liability was not seriously disputable.

16    61.    State Farm had a duty to give equal consideration to Plaintiffs' interests

17   as it did its own interests.

18    62.    The test for evaluating whether an insurance company has given equal

19   consideration to the interests of its insured is whether a prudent insurer without

20   policy limits would have accepted the settlement offer.  RAJI (CIVIL 5TH ED.) Bad

1    Faith 8.

2         63.    Under the circumstances facing Defendant State Farm, any prudent

3    insurer without policy limits would have accepted the Tabahas settlement demand.

4         64.    Because State Farm refused to accept the Tabahas settlement demand,

5    Defendant State Farm breached its duty of good faith and fair dealing.

6         65.    Defendant State Farm breached the implied covenant and the duty of

7    good faith and fair dealing by intentionally, recklessly, or otherwise knowingly

8    failing and refusing to provide insurance coverage and protection to its insured; by

9    failing to give fair and equal consideration to the interests of its insured; by failing

10   to conduct a timely and adequate investigation; and by failing to act promptly in

11   paying a legitimate claim.

12        66.    When an insurance company breaches its duty, it is liable for the full

13   amount of any subsequent and/or consequential damages suffered by the insured.

14   *Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz. App. 538, 410 P. 2d 495 (1966); *State Farm*

15   *Mut. Ins. Co. v. St. Joseph's Hosp.*, 107 Ariz. 498, 489 P.2d 837 (1971).

16        67.    As damages, Plaintiffs are entitled to the monetary loss or damage to

17   credit reputation experienced and reasonably probable to be experienced in the

18   future; and the emotional distress, humiliation, inconvenience, and anxiety

19   experienced and reasonably probable to be experienced in the future. RAJI (CIVIL

20   5TH ED.) Bad Faith 12.

## Count III
### (Legal Malpractice – LLF)

68.     The Sams incorporate by reference all allegations contained in the preceding paragraphs as though fully stated and alleged herein.

69.     At all relevant times an attorney/client relationship existed between the Sams, as clients, and Defendant LLF and their employees and/or agents, as attorneys. This relationship arose by way of express agreements and may also be inferred or implied due to the conduct of the parties.

70.     The Sams sought and received legal advice and/or services from Defendant LLF and their employees and/or agents in matters pertinent to the Defendants' profession as attorneys.

71.      Defendant LLF and its employees and/or agents owed duties to the Sams to act with undivided loyalty, and with reasonable care, skill, and diligence.

72.     Defendants and their employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams.

73.     Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they failed to notify Defendant State Farm when the Tabahas presented a time-limited proposal to accept policy limits in full settlement.

74.     Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they failed to demand Defendant State Farm to protect the Sams when a policy limits demand was made.

75.     Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they instructed Defendant State Farm not to offer policy limits to the Tabahas.

76.     Among others acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Plaintiffs when they advised Plaintiffs to file for bankruptcy.

77.     Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Plaintiffs when they advised Plaintiffs not to cooperate with the Trustee.

78.     Defendants are liable to the Plaintiffs for damages caused by their agents and/or employees under principles of agency and/or respondent superior.

79.     As a direct and proximate result of the negligence of Defendants and their employees and/or agents, Plaintiffs incurred substantial damages, including monetary loss or damage to credit reputation experienced and reasonably probable

to be experienced in the future; and the emotional distress, humiliation, inconvenience, and anxiety experienced and reasonably probable to be experienced in the future, in an amount to be determined at trial.

### Count IV
### (Punitive Damages – As to all Defendants)

80.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully stated and alleged herein.

81.    The wrongful conduct of Defendants as alleged herein constitutes gross negligence, bad faith, deliberate indifference, and wanton, willful and malicious conduct, in that Defendants acted or failed to act when they knew or had reason to know that their conduct created a substantial risk of significant harm to Plaintiff, and the high probability that substantial harm or death would result.

82.    Defendants consciously pursued a course of conduct, knowing or having reason to know of a substantial risk of significant harm to the public, including, Plaintiffs, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiffs requests that they be granted judgment against each of the Defendants jointly, severally, cumulatively and/or alternatively as follows:

A.    That Plaintiffs be awarded compensatory, incidental and consequential damages, against each of the Defendants in an amount to be determined at trial;

B.    That Plaintiffs be awarded attorneys' fees and costs, pursuant to

1   applicable law;

2   C.    That Plaintiffs be awarded punitive damages in an amount to be

3   determined at trial;

4   D.    That Plaintiffs be awarded pre- and post-judgment, pursuant to

5   applicable law;

6   E.    For such other relief as the Court finds just and reasonable under the

7   circumstances.

8

9   DATED this 12th day of June, 2017.

10

11

12   By_____
    Matthew L. McClellan
    THE MCCLELLAN LAW FIRM, P.L.C.

13   and

14
    Richard S. Plattner
15   PLATTNER VERDERAME, P.C.
    *Attorneys for Plaintiff*

16

17

18

19

20

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
S. Bagnall, Deputy
6/14/2017 10:46:00 AM
Filing ID 8416039

1  Matthew L. McClellan (I.D.# 022586)
   The McClellan Law Firm
2  361 East Coronado, Suite 101
   Phoenix, Arizona 85004-1525
3  Telephone: (602) 386-4800
   Fax: (602) 386-4801
4  matt@mcclellanlawaz.com

5  Richard Plattner, Bar # 005019
   Plattner Verderame
6  316 E. Flower St.
   Phoenix, AZ 85012
7  Telephone: (602) 266-2002
   rplatter@plattner-verderame.com
8  *Attorneys for Plaintiff*

9                    **Superior Court of Arizona**

10                      **Maricopa County**

11  CHERYL SAM and CARLEEN SAM,          )   **NO. CV2017-008891**
    individually and on behalf of        )
    themselves and their respective      )
12  bankruptcy estates, Lawrence         )   **First Amended Complaint**
    Warfield, trustee,                   )
                                         )   (Tort Non-Motor Vehicle – Bad
13                        Plaintiffs,    )   Faith/Breach of Contract/Legal
    v.                                   )   Malpractice/Aiding and Abetting
                                         )   Bad Faith)
14                                       )
    THE LEDBETTER LAW FIRM,              )   (Assigned to the Honorable Kerstin LeMaire)
15  P.L.C.; an Arizona professional      )
    limited liability company; STATE     )
16  FARM FIRE AND CASUALTY              )
    COMPANY, an Illinois corporation;    )
    JOHN and JANE DOES I-X; BLACK        )
17  and WHITE PARTNERSHIPS I-X;          )
    ABC CORPORATIONS I-X,                )
18                                       )
                          Defendants.    )
                                         )

19        Plaintiffs, for their Complaint, state, aver and allege as follows:

1.    Plaintiff Cheryl Sam is, and at all times was a resident of Apache County, Arizona.

2.    Plaintiff Carleen Sam is, and at all times was a resident of Apache County, Arizona.

3.    Plaintiff Lawrence Warfield is a US Bankruptcy Trustee for the District of Arizona. Plaintiff Warfield is the duly appointed Trustee for the bankruptcies filed by Plaintiffs Carleen and Cheryl Sam at the behest of Defendant Ledbetter Law Firm, PLC.

4.    Defendant Ledbetter Law Firm, PLC, ("LLF") is an Arizona professional corporation, having its principal place of business located in Yavapai County, Arizona that, at all relevant times hereto, was engaged in the business of providing legal services and provided legal services to Plaintiffs.  LLF is liable for the acts of its employees under the doctrine of *respondeat superior* and LLF is liable for the conduct of its agents under principles of agency.

5.    All acts by LLF described herein were committed by and through its servants, employees, or agents, and subsequently ratified by LLF.

6.    Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois Corporation licensed to do and doing business in Arizona.

7.    Defendant State Farm is liable for the acts of its employees under the doctrine of *respondeat superior* and State Farm is liable for the conduct of its agents

1  under principles of agency.

2          8.     All acts by State Farm described herein were committed by and through

3  its servants, employees, or agents, and subsequently ratified by State Farm.

4          9.     The   Defendants,   Black   and   White   Partnerships   I-X   and   ABC

5  Corporations I-X, are fictitious entities whose true names are presently unknown,

6  but who may have been parent companies, subsidiaries or affiliates of State Farm

7  and liable for the acts complained of herein.  Upon ascertaining the true names and

8  conduct of such entities, leave is requested to amend the Complaint.

9          10.    State Farm is directly liable for breaches of its non-delegable duty of good

10 faith and fair dealing committed by any of its servants, employees, agents, attorneys

11 or TPA's.

12         11.    This Court has subject matter jurisdiction and personal jurisdiction over

13 all of the parties named herein.

14                              **General Allegations**

15         12.    At all relevant times Plaintiff Cheryl Sam maintained an insurance

16 policy with Defendant State Farm under policy No. 0254-996-03A with liability limits

17 of $15,000 per person and $30,000 per incident.

18         13.    On October 20, 2009, Plaintiff Carleen Sam was a permissive user of

19 Plaintiff Cheryl Sam's automobile covered by the State Farm policy, when she was

20 involved in a crash in Fort Defiance, Arizona.

14.    The occupants of the other vehicle involved in the crash were Nancy Tabaha, Charlene Tabaha, Arvisa Tabaha and Stephanie Tabaha ("the Tabahas").

15.    On October 19, 2011, the Tabahas filed a Complaint against Cheryl Sam in the Navajo Nation District Court captioned WR-CV-288-11 ("Navajo Court action"), alleging personal injuries and damages arising from the October 20, 2009 crash.

16.    On November 21, 2011, Defendant LLF, having been retained by Defendant State Farm to represent the Sams, appeared in the Navajo Court action as counsel representing Plaintiff Cheryl Sam.  Defendant LLF was at all relevant times an agent and attorney for Defendant State Farm as well as attorney for the Sams.  All knowledge and information obtained by Defendant LLF as part of its representation of the Sams is legally imputed to Defendant State Farm.  *In re Estate of Milliman*, 101 Ariz. 54, 415 P.2d 877 (1966); *Pargman v. Vickers*, 208 Ariz. 573, 579, 96 P.3d (App. 2004)

17.    On November 21, 2011, Defendant LLF wrote to the Arizona Health Care Cost Containment System ("AHCCCS") requesting lien information regarding the Tabahas.

18.    In December 2011 and January 2012, AHCCCS advised Defendant LLF that it was pursuing liens with respect to medical payments made on behalf of the Tabahas in the amounts of:

1   a.   Stephanie Tabaha -      $   855.93

2   b.   Charlene Tabaha -      $   319.93

3   c.   Arvisa Tabaha -      $ 2,923.16

4   d.   Nancy Tabaha -      $ 49,581.13

5   19.   As of January 13, 2012, Defendants were aware that Nancy Tabaha has

6   incurred medical expenses of at least $172,306.00 from St Joseph's Hospital and

7   Medical Center in relation to injuries she suffered in the car crash.

8   20.   On or about February 2, 2012, the Tabahas' counsel's office contacted

9   State Farm directly and requested the policy limits if they were low, and offered to

10   settle the Tabahas' claims for those limits.

11   21.   Upon information and belief, State Farm and LLF never responded to

12   this policy limits demand from the Tabahas.

13   22.   On March 21, 2012, the Tabahas, in a letter faxed and mailed to LLF,

14   collectively offered to settle and release all their personal injury claims against the

15   Sams in exchange for the Sams' $30,000 policy limits.   The letter stated the offer

16   would be withdrawn on March 30, 2012 if not accepted.

17   23.   Upon information and belief, Defendant LLF failed to communicate the

18   time-limited policy limits settlement proposal to Defendant State Farm within the

19   time limit.   Neither Defendant LLF nor Defendant State Farm requested an

20   extension of the time limit.

24.    By failing to timely accept the March 21, 2012 policy limits proposal submitted to LLF, Defendant State Farm's agent, Defendant State Farm rejected the offer to settle for Plaintiffs' policy limits.

25.    Defendant LLF knew there were no valid liability defenses to the Tabahas claims.

26.,    Defendant LLF knew the Tabahas' claims almost certainly exceeded the Sams' policy limits.

27.    Defendant LLF advised Defendant State Farm not to pay the policy limits and settle the claim with the Tabahas.

28.    Defendant State Farm offered to pay its $30,000 policy limits to the Tabahas for the first time on October 2, 2014 by letter from State Farm to the Sams' attorneys, approximately 30 months after the deadline had expired.  The Tabahas refused to accept Defendant State Farm's belated settlement proposal.

29.    On or about November 9 or 10, 2015, Defendant LLF recommended to the Sams that they file bankruptcy.

30.    On or about November 9 and/or 10, 2015, and before talking to bankruptcy counsel, the Sams agreed to follow Defendant LLF's recommendation to file bankruptcy.

31.    Upon information and belief, before Plaintiffs agreed to file for bankruptcy, Defendant LLF selected and contacted law firm Davis Miles McGuire

Gardner, PLLC ("Davis Miles") to file an emergency bankruptcy for the Sams. Davis Miles quoted a flat fee of $5,000 to handle the "emergency bankruptcy case."

32.   On November 11, 2015, Defendant LLF paid $5,000 to Davis Miles with check No. 16780 to file bankruptcy cases for the Sams.

33.   On November 12, 2015, Defendant State Farm refused to reimburse the bankruptcy attorneys' fees.

34.   Before the trial was vacated, Defendants State Farm and LLF provided the Plaintiffs with money to pay the necessary travel expenses to Flagstaff to institute the "emergency bankruptcy case" and stay the trial.

35.   On November 13, 2015, Davis Miles filed two petitions for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Arizona. Plaintiff Carleen Sam's case is captioned 15-BK-14564 DPC and Cheryl Sam's case is captioned 15-BK-14565-EPB.

36.   After the trial in the Navajo Court action was vacated, Defendants State Farm and LLF refused to provide the Plaintiffs with necessary travel expenses to Flagstaff for the Creditors' Meetings associated with their respective bankruptcy cases.

37.   The Tabahas Navajo Court action claims were listed on the Sams' Schedules B as creditors of Plaintiffs' respective bankruptcy estates.

38.  On April 6, 2016, the Tabahas filed an amended Proof of Claim in Plaintiff Carleen Sam's bankruptcy cases in the amounts of $2,100,000.

39.  On April 6, 2016, the Tabahas filed an amended Proof of Claim in Plaintiff Cheryl Sam's bankruptcy cases in the amounts of $2,100,000.

40.  On September 26, 2016, the Plaintiffs Sam agreed to cooperate with the Plaintiff Warfield in the investigation of any claims they may have against Defendants State Farm and LLF.

41.  On or about March 11, 2017, Defendant LLF contacted the Sams and convinced them to withdraw cooperation with the Trustee, despite the Sams' obligation to cooperate with the Trustee.

42.  Upon information and belief, LLF's March 2017 communication with the Sams was done with the knowledge, consent and/or at the behest of Defendant State Farm.

43.  Upon information and belief, Defendants LLF and State Farm interfered with the Sams' cooperation with the Trustee for their own benefit, knowing it was to the detriment of the Sams.

44.  Upon information and belief, LLF and State Farm interfered with the Sams' cooperation with the Trustee because LLF and State Farm believed the Sams' cooperation with the Trustee would be detrimental to LLF's and State Farm's interests.

## Count I
### (Breach of Contract – State Farm)

45.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully stated and alleged herein.

46.     For valuable consideration in the form of premiums, Plaintiff Cheryl Sam contracted with Defendant State Farm to receive automobile liability insurance protection coverage for her 2007 Chevrolet Trailblazer. Defendant State Farm, issued Policy No. 0254-996-03A to Cheryl Sam providing coverage for automobile liability up to limits of $15,000 per person and $30,000 per incident. Carleen Sam, as a permissive user of the insured vehicle, was an omnibus insured under the policy.

47.     In return for valuable consideration in the form of premiums, State Farm promised to pay damages for bodily injury for which any insured became legally responsible because of an auto accident.

48.     Defendant State Farm breached its contractual obligation to pay damages the Sams became legally responsible to pay because of the car crash on October 20, 2009.

49.     As a direct and proximate result of State Farm's breach, Plaintiffs suffered damages in excess of the jurisdictional limits of this court.

## Count II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – State Farm)

50.     Plaintiffs incorporate by reference all allegations contained in the

1    preceding paragraphs as though fully stated and alleged herein.

2         51.    Every insurance contract has an implied duty of good faith and fair

3    dealing. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986).

4         52.    The duty of good faith and fair dealing requires an insurance company

5    to give the same consideration to its insured's interests as it gives to its own when it

6    considers a settlement offer. *General Accident Fire & Life Assur. Corp. v. Little*, 103

7    Ariz. 435, 443 P.2d 690 (1968); *Farmers Ins. Exchange v. Henderson*, 82 Ariz. 335,

8    313 P.2d 404, 405-408 (Ariz. 1957).

9         53.    The test for evaluating whether an insurance company has given equal

10   consideration to the interests of its insured is whether a prudent insurer without

11   policy limits would have accepted the settlement offer. RAJI (CIVIL 5TH ED.) Bad

12   Faith 8.

13        54.    This doctrine imposes liability for excess damages for insurance

14   companies that wrongly reject reasonable settlement demands and thereby expose

15   their insureds to losses above the policy limits.

16        55.    The duty of equal consideration focuses primarily on liability limits as a

17   source of conflict between insurers and insureds and seeks to neutralize the effect of

18   those limits by requiring insurers to ignore them when evaluating settlements.

19   Insurance companies are required to act as if there were no insurance limits when

20

1  evaluating a settlement proposal. *Clearwater v. State Farm Mut. Ins. Co.,* 164 Ariz.

2  256, 260, 792 P.2d 719, 723 (1990).

3    56.    The claim function of the insurance company is the delivery of the

4  promise to pay. The claim function should include the prompt, fair, and efficient

5  delivery of this promise.

6    57.    The claim professional handling claims should honor the company's

7  obligations under the implied covenant of good faith and fair dealings.

8    58.    To be effective in handling claims, a claim representative should have a

9  working knowledge of tort law, contract law, statutory law, common law, and civil

10  procedures.

11    59.    The main function of the claim department is to pay claims. The claims

12  process involves the prompt, fair, and efficient payment of covered losses.

13    60.    The claim representative's primary duty is to fulfill the insurance

14  company's promises to the insured.

15    61.    An insurer has a duty "to immediately conduct an adequate

16  investigation, act reasonably in evaluating the claim, and act promptly in paying a

17  legitimate claim."

18    62.    On February 2, 2012 and March 21, 2012, the Tabahas offered to resolve

19  all their claims against the Plaintiffs in exchange for the available $30,000 policy

20  limits.

63.     Defendant LLF, as State Farm's agent, advised State Farm not to pay the Sams' policy limits to settle the claim, despite knowing that there were no valid liability defenses and that the Tabahas' claims would almost certainly exceed the available policy limits.

64.     The collective Tabaha claims far exceeded the available limits and liability was not seriously disputable.

65.     State Farm had a duty to give equal consideration to Plaintiffs' interests as it did its own interests.

66.     The test for evaluating whether an insurance company has given equal consideration to the interests of its insured is whether a prudent insurer without policy limits would have accepted the settlement offer.  RAJI (CIVIL 5TH ED.) Bad Faith 8.

67.     Under the circumstances facing Defendant State Farm, any prudent insurer without policy limits would have accepted the Tabahas settlement demand.

68.     Because State Farm refused to accept the Tabahas settlement demand, Defendant State Farm breached its duty of good faith and fair dealing.

69.     Defendant State Farm breached the implied covenant and the duty of good faith and fair dealing by intentionally, recklessly, or otherwise knowingly failing and refusing to provide insurance coverage and protection to its insured; by failing to give fair and equal consideration to the interests of its insured; by failing

1   to conduct a timely and adequate investigation; and by failing to act promptly in

2   paying a legitimate claim.

3       70.   When an insurance company breaches its duty, it is liable for the full

4   amount of any subsequent and/or consequential damages suffered by the insured.

5   *Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz. App. 538, 410 P. 2d 495 (1966); *State Farm*

6   *Mut. Ins. Co. v. St. Joseph's Hosp.*, 107 Ariz. 498, 489 P.2d 837 (1971).

7       71.   As damages, Plaintiffs are entitled to the monetary loss or damage to

8   credit reputation experienced and reasonably probable to be experienced in the

9   future; and the emotional distress, humiliation, inconvenience, and anxiety

10   experienced and reasonably probable to be experienced in the future.  RAJI (CIVIL

11   5TH ED.) Bad Faith 12.

12

### Count III
### (Legal Malpractice – LLF)

13

14       72.   The Sams incorporate by reference all allegations contained in the

preceding paragraphs as though fully stated and alleged herein.

15

16       73.   At all relevant times an attorney/client relationship existed between the

Sams, as clients, and Defendant LLF and their employees and/or agents, as

17   attorneys. This relationship arose by way of express agreements and may also be

18   inferred or implied due to the conduct of the parties.

19

20

74.    The Sams sought and received legal advice and/or services from Defendant LLF and their employees and/or agents in matters pertinent to the Defendants' profession as attorneys.

75.    Defendant LLF and its employees and/or agents owed duties to the Sams to act with undivided loyalty, and with reasonable care, skill, and diligence.

76.    Defendants and their employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams.

77.    Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they failed to notify Defendant State Farm when the Tabahas presented a time-limited proposal to accept policy limits in full settlement.

78.    Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they failed to demand Defendant State Farm to protect the Sams when a policy limits demand was made.

79.    Among other acts or omissions, Defendant LLF and its employees and/or agents breached their duties of undivided loyalty, reasonable care, skill, and diligence owed to the Sams when they instructed Defendant State Farm not to offer policy limits to the Tabahas, despite knowing there were no viable liability defenses

1   and that the Tabahas' claims almost certainly exceeded the Sams' available policy

2   limits.

3       80.    Among others acts or omissions, Defendant LLF and its employees

4   and/or agents breached their duties of undivided loyalty, reasonable care, skill, and

5   diligence owed to the Plaintiffs when they advised Plaintiffs to file for bankruptcy.

6       81.    Among other acts or omissions, Defendant LLF and its employees and/or

7   agents breached their duties of undivided loyalty, reasonable care, skill, and

8   diligence owed to the Plaintiffs when they advised Plaintiffs not to cooperate with

9   the Trustee.

10   **Count IV**
**(Aiding and Abetting Bad Faith – LLF)**

11
12       82.    The Sams incorporate by reference all allegations contained in the

preceding paragraphs as though fully stated and alleged herein.

13
14       83.    Upon information and belief, Defendant State Farm's refusal to accept

the Tabahas' settlement demand was based, at least in part, on Defendant LLF's

15   advice.

16
17       84.    Defendant LLF substantially advised, assisted or encouraged Defendant

State Farm in the commission of the tort of bad faith through their aforementioned

18   conduct, including but not limited to repeatedly advising Defendant State Farm to

19   refuse to settle the claim.

20

85.     Because Defendant LLF advised and/or assisted Defendant State Farm in its bad faith handling of the claims against the Sams, Defendant LLF is subject to liability for aiding and abetting Defendant State Farm's tortious conduct.  *Chalpin v. Snyder*, 220 Ariz. 413, 424, 207 P.3d 666, 677 (App. 2008).

86.     As a direct and proximate result of LLF's aiding and abetting, Plaintiffs suffered damages in excess of the jurisdictional limits of this court.

87.     Defendants are liable to the Plaintiffs for damages caused by their agents and/or employees under principles of agency and/or respondent superior.

88.     As a direct and proximate result of the negligence of Defendants and their employees and/or agents, Plaintiffs incurred substantial damages, including monetary loss or damage to credit reputation experienced and reasonably probable to be experienced in the future; and the emotional distress, humiliation, inconvenience, and anxiety experienced and reasonably probable to be experienced in the future, in an amount to be determined at trial.

## Count V
### (Punitive Damages – As to all Defendants)

89.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully stated and alleged herein.

90.     The wrongful conduct of Defendants as alleged herein constitutes gross negligence, bad faith, deliberate indifference, and wanton, willful and malicious

1    conduct, in that Defendants acted or failed to act when they knew or had reason to

2    know that their conduct created a substantial risk of significant harm to Plaintiff,

3    and the high probability that substantial harm or death would result.

4         91.    Defendants consciously pursued a course of conduct, knowing or having

5    reason to know of a substantial risk of significant harm to the public, including,

6    Plaintiffs, so as to justify an award of exemplary and punitive damages.

7        WHEREFORE, Plaintiffs requests that they be granted judgment against each

8    of the Defendants jointly, severally, cumulatively and/or alternatively as follows:

9        A.    That Plaintiffs be awarded compensatory, incidental and consequential

10    damages, against each of the Defendants in an amount to be determined at trial;

11        B.    That Plaintiffs be awarded attorneys' fees and costs, pursuant to

12    applicable law;

13        C.    That Plaintiffs be awarded punitive damages in an amount to be

14    determined at trial;

15        D.    That Plaintiffs be awarded pre- and post-judgment, pursuant to

16    applicable law;

17        E.    For such other relief as the Court finds just and reasonable under the

18    circumstances.

19

20

1    DATED this 14th day of June, 2017.

2

3
                                   By_____
4                                        Matthew L. McClellan
                                         THE MCCLELLAN LAW FIRM, P.L.C.
5
                                         and
6
                                         Richard S. Plattner
7                                        PLATTNER VERDERAME, P.C.
                                         *Attorneys for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20